UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

---

CRIMINAL NO. 05-10001-WGY

---

UNITED STATES

v.

GREGORY R. WRIGHT

---

**DEFENDANT'S RESPONSE TO
BOSTON POLICE DEPARTMENT'S MOTION TO QUASH AND TO
COURT'S REQUEST FOR BRIEFING**

---

I.     **OVERVIEW OF RELEVANT FACTS.**

An evidentiary hearing on the *Defendant's Motion to Suppress Evidence Obtained from Warrantless Search* was commenced in this Court before the Honorable William G. Young on June 10, 2005.  Moments before the hearing began, the Government provided the defendant, through counsel, with a large file concerning a Boston Police Internal Affairs Department (IAD) investigation into the conduct of Boston Police Officer Gregory Brown.  Officer Brown was the lead officer involved in the defendant's arrest and search, and was the first witness called by the Government at the suppression hearing.  Due to the lateness of the Government's disclosure, defense counsel reserved the right to recall Officer Brown after an opportunity to review the IAD materials.  The Government's second witness was Boston Police Officer Lawrence Celester.  The hearing was adjourned on June 10th in the midst of Officer Celester's cross-examination, and was continued to

July 18, 2005. The Government indicated that its third and final witness, Boston Police Officer

Mark Bordley, would be called to the witness stand on that date.

On June 27, 2005, defense counsel submitted a written request to the Boston Police

Department under the Massachusetts Public Records Law, Mass.Gen.Laws c. 66, §10(a), for "all

records of any Internal Affairs investigations and proceedings concerning the following three

members of the Boston Police Department: 1. Officer Gregory Brown; 2. Officer Lawrence Celester;

3. Officer Mark Bordley." *See June 27, 2005, Letter*, attached as Exhibit 1. On or about July 12,

2005, counsel received a response to the public records request from the Boston Police Department,

stating that there were 12 pertinent files. *See July 7, 2005 Letter*, attached as Exhibit 2. The

estimated cost for "retrieval, segregation, creation of an index log and copying of the documents"

would be "**$2,940.**" *Id*. (Emphasis in original). That cost was broken down as follows:

> 3 hours per file to review, redact and index (estimated file size - 200 pgs ea.)
> $3 × \$15.00 × 12$ files = \$540.00
> \$1.00 per page copy cost (est. 12 files @ 200 pgs ea.) = \$2,400.00

*Id*. The Boston Police Department explained the necessity for these costs as follows:

> It is the Department's intention to object to production of Internal Affairs files when
> the disclosure would invade an employee's legitimate privacy rights or the legitimate
> privacy rights of complainants and/or witnesses and where disclosure would violate
> statutory requirements. The documents that **can** be provided are redacted of personal
> identifying information, pursuant to G.L. c. 4, §7, cl. 26(c) and consistent with *Antell
> v. Attorney General*, 52 Mass. App. Ct. 244 (2001) and *Wakefield Teachers Ass'n v.
> School Comm. Of Wakefield*, 431 Mass. 792 (2000). Prior to responding to this
> request an itemized and indexed document log of each file must be created and
> forwarded to the requested officer for any specific objections.

*Id*.

On July 13, 2005, defense counsel sought an Order of this Court directing persons

subpoenaed in this case that subpoenas are enforceable as an Order of the Court. The following

Order issued on the same date:

> It is hereby ordered that any subpoena issued by a party to the above-captioned case, or by a person lawfully representing a party in this matter, is enforceable as an Order of this Court. The recipient is ordered to comply with the subpoena. If the recipient believes that there is a lawful basis to resist complying with the subpoena, the recipient shall, in advance of the date set forth in the subpoena, file a motion to quash with the Clerk of this Court, accompanied by a memorandum and affidavit. Copies of any such motion, memorandum, and affidavit shall be served on counsel for the parties.

A copy of this Order, along with a subpoena commanding production on July 18, 2005, of the previously-requested IAD files in complete, unredacted form, was served upon the Keeper of Records for the Boston Police Department on July 14, 2005.

Margaret M. Buckley, a Boston Police Staff Attorney, appeared at the continuation of the suppression hearing on July 18, 2005, with a Motion to Quash Subpoena and a Memorandum of Law in support thereof. The sole stated ground for the Department's motion was that the defendant had allegedly failed to show how the subpoenaed records would be "evidentiary and relevant."[1] The Court (Young, C.J.) heard argument on the Motion to Quash before the suppression hearing commenced. Ms. Buckley orally made additional arguments regarding the need to redact those limited portions of the subpoenaed records which would not qualify as Public Record under Massachusetts Law, and regarding the cost to the Department of complying with the subpoena, as detailed in the Department's July 7th letter to defense counsel.

Chief Judge Young ordered the Boston Police Department to produce the subpoenaed records

---

[1]    The Department's papers did also contain isolated claims that the subpoena was "overbroad" and that the subpoenaed records were "confidential." Those claims were not elaborated in the Memorandum of Law, and they were not argued before the Court. As to the assertion that the records were "confidential," Ms. Buckley in fact advised the Court that, for the most part, the subpoenaed records constituted Public Records under Massachusetts law.

to him *in camera* on or before July 20, 2005, noting that he may be alleviating some of the cost of compliance by conducting any necessary review and redaction himself.  He also requested further briefing on the question of how to best allocate the costs associated with complying with this sort of subpoena, where ordinarily the Boston Police Department would be entitled to compensation for producing the records under the Massachusetts Public Records Law, but where the records were subpoenaed by an indigent criminal defendant.

This memorandum addresses both the merits of the Boston Police Department's Motion to Quash and the Court's request for briefing.

## II.    DISCUSSION.

### A.    Contrary to the Boston Police Department's Claim, a Criminal Defendant Is Not Required to Make a Particularized Showing Before Issuance of a Trial Subpoena.

The Boston Police Department cites *United States v. Concemi*, 957 F.2d 942, 949 (1st Cir. 1992); *United States v. Iozia*, 13 F.R.D. 335, 338 (S.D.N.Y. 1952); *United States v. Nixon*, 418 U.S. 683, 702 (1974); and *United States v. Lafayette*, 983 F.2d 1106 (D.C.Cir. 1993), for the proposition that the defendant was required to show that the subpoenaed materials were "evidentiary and relevant."  These cases are inapposite.  The *Iozia* and *Nixon* cases concern **pre-trial** subpoenas under Fed.R.Crim. 17(c)(1) ("The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence").  Where a defendant seeks production and inspection of records in advance of trial pursuant to Rule 17(c), he must "clear three hurdles: (1) relevancy; (2) admissibility; (3) specificity."  *Nixon*, 418 U.S. at 700.  No such showing is required for issuance of a subpoena duces tecum producible at trial.  2 CHARLES ALLAN WRIGHT & ARTHUR R. MILLER, Federal Practice and Procedure § 274 (3rd ed. 2000), *citing United States v. Van Allen*,

28 F.R.D. 329, 334 (D.C.N.Y. 1961).

The *Concemi* and *Lafayette* cases involved even higher hurdles. The defendants in *Lafayette* challenged the District Court's denial of their motions for a new trial, assigning as error the denial of post-trial motions for discovery of the personnel files of police officers who participated in the investigation and/or trial of the cases against them. *Lafayette*, 983 F.2d at 1103. Finding that the defendants had offered "virtually nothing" in support of their post-trial discovery motions, the DC Circuit concluded that the District Court had not abused its discretion. *Id*. at 1106. In *Concemi*, the defendant sought reversal of his conviction on the ground that his subpoena duces tecum had been quashed before trial. The First Circuit explained:

> [A] ruling quashing a subpoena is appealable after conviction, [however] the trial court has so much discretion in this area that reversal is unlikely. The moving party must show, among other things, that the material he seeks is evidentiary and relevant. ... Mere speculation as to the content of documents is hardly a showing of relevance. ... Even assuming the relevance of the subpoenaed documents, we see nothing in the record which leads us to conclude that the trial court abused its broad discretion in denying the request.

*Concemi*, 957 F.2d at 949 (internal quotations, citations omitted). Both *Concemi* and *Lafayette* concern the showing that is required before a case will be reversed due to a limitation of discovery. Neither case has any bearing on the defendant's right to subpoena Boston Police IAD files to his suppression hearing without prior approval of the Court.

Not only is the Boston Police Department's legal contention without merit, but, even assuming that the defendant were required to make some showing that the subpoenaed materials would be relevant, the Boston Police Department has offered no factual support whatsoever for its contention that the subpoenaed IAD files would not be relevant to the issues before this Court. The subpoenaed records concerned only those Officers testifying on behalf of the Government in its

effort to prove that the warrantless search of the defendant was justified. Certainly any disciplinary proceedings calling the integrity and/or veracity of any of those officers into doubt would be relevant to this Court's task. *Contrast Lafayette*, 983 F.2d at 1106 (emphasizing that officers whose personnel files were sought had been involved in the investigation but had not testified at trial).

> **B.    The Boston Police Department Has Not Established with Sufficient Specificity What Portions of the Subpoenaed Documents, If Any, must Be Withheld from Disclosure.**

The Boston Police Department has indicated that certain portions of the subpoenaed documents are exempt from disclosure under Massachusetts' Public Record Law. The Department bears a heavy burden to satisfy this Court that privacy or security interests outweigh the public interest enforcing the subpoena. *Cavallaro v. United States*, 284 F.3d 236, 246 (1st Cir. 2002); *Application of Certain Chinese Family Benevolent and District Associations*, 19 F.R.D. 97 (N.D.Cal.1956); *In re Corrado Bros., Inc.*, 367 F.Supp. 1126 (D.C.Del.1973). Similarly, under Massachusetts law, the burden is on the custodian of a record requested under the Public Records Law to prove, "with specificity," the applicability of a relevant exemption. *Worcester Telegram & Gazette Corp. v. Chief of Police of Worcester*, 58 Mass. App. Ct. 1, 4 (2003).

The mere existence of a statutory exemption is not dispositive of the point. Instead, application of the statutory exemptions requires case-by-case analysis with specific reference to the nature and character of the precise documents at issue and the public's interest in disclosure of that material. *Worcester*, 58 Mass. App. Ct. at 4-6 (discussing "personnel records" exemption with reference to complaints and investigations of police brutality); *Globe Newspaper Company v. Police Commissioner of Boston*, 419 Mass. 852 (1995) (discussing "privacy" and "investigatory material" exemptions with reference to IAD files).

Since the Boston Police Department has failed to show, with the requisite specificity, whether any portion of the subpoenaed IAD records are subject to redaction, the presumption in favor of disclosure governs. *Worcester*, 58 Mass. App. Ct. at 3-4; Mass.Gen.Laws c. 66, § 10(c).

### C.   The Cost of Compliance with a Subpoena Duces Tecum must Be Assumed as Part of the Public Duty of Providing Evidence, Except in Extraordinary Circumstances Where Compliance Would Be Unduly Onerous.

In *Hurtado v. United States*, 410 U.S. 578 (1973), involving federal criminal prosecutions for aiding illegal re-entry of aliens, the Supreme Court observed: "It is beyond dispute that there is in fact a public obligation to provide evidence [in a criminal prosecution], and that this obligation persists no matter how financially burdensome it may be." *Hurtado*, 410 U.S. at 589 (internal citations omitted). Based upon this principle, the general rule has been that a recipient of a subpoena duces tecum in a criminal prosecution or a grand jury proceeding is required to bear the costs of compliance as part of the public duty of providing evidence. *In re Grand Jury No. 76-3 (MIA) Subpoena Duces Tecum*, 555 F.2d 1306, 1308 (5th Cir. 1977). The recipient may move the court, pursuant to F.R.Crim.P. 17(c)(2), to reallocate the financial burden where "compliance would be unreasonable or oppressive." "It is only, however, in very extreme circumstances that it is appropriate for a court to impose conditions of this nature." *United States v. Tivian Laboratories, Inc.*, 589 F.2d 49, 55 (1st Cir 1978).

The burden of proving that compliance would be unduly onerous is on the subpoenaed party. *Id*. A "clear showing" of unreasonableness is required in order to warrant reallocation of the costs. *In the Matter of the Grand Jury Subpoenas to Midland Asphalt Corp.*, 616 F.Supp. 223, 225 (W.D.N.Y. 1985); *In re Grand Jury Investigation*, 459 F.Supp. 1335, 1340 (E.D.Pa. 1978). A determination to shift the cost of compliance with an otherwise reasonable subpoena necessarily

involves "consideration of the financial capability of the subpoenaed party." *Grand Jury Investigation*, 459 F.Supp. at 1340. *See also, e.g., Midland Asphalt Corp.*, 616 F.Supp. at 224-225 (undue onerousness not shown where $18,000 cost of compliance represented less than 2% of subpoenaed corporation's operating expenses). Another important consideration is the reasonableness of the claimed costs. *Id.*; *In re Grand Jury No. 76-3*, 555 F.2d at 1308-1309. The actual cost should be gauged by the least expensive means of compliance available. *In re Grand Jury No. 76-3*, 555 F.2d at 1308-1309 (where duplication of requested documents is undertaken by the subpoena's recipient for his own convenience, expenses should be measured by the cost of production of the originals). *See also, e.g., United States v. Van Horn*, 156 F.R.D. 231 (D.Oregon 1994) (where subpoena duces tecum served upon the City of Portland Bureau of Police requested opportunity to examine IAD files, but Police insisted on providing copies rather than allowing examination, Police were required to pay the costs for copying these public documents).

In light of the foregoing principles, it is clear that the Boston Police Department may properly be held to shoulder the burden of compliance with a subpoena for public records. As a custodian of public records, the Department is required to respond to requests for the type of information subpoenaed in this case on a routine basis. The Supervisor of Public Records has established as a standard of practice an obligation "to use the most efficient means of expurgation and to have that service performed at the rate of pay of the lowest paid officer or employee that can practically be expected to fulfill the [public records requests]." *Supervisor of Public Records*, No. 680, January 29, 1980. Performance of these services is to be considered "standard office procedure." *Supervisor of Public Records*, No. 214, March 20, 1978. The process of complying with requests for public records such as those subpoenaed in this case is, by the Supervisor's deliberate design, "not ... unduly

burdensome" to the Department. *Supervisor of Public Records*, No. 680, January 29, 1980. The Department ought to be easily able to absorb the costs of compliance.

Further, it does not appear that the Department's fees, as set forth in Exhibit 2, reflect the least expensive means of complying with the subpoena. It seems highly unlikely that the Department's charge of $15/hour to "review, redact and index" the documents is truly the "rate of pay of the lowest paid officer or employee that can practically be expected to fulfill the request." *Supervisor of Public Records*, No. 680, January 29, 1980; *Supervisor of Public Records*, No. 611, November 1, 1979. The $1.00/page copying fee is not necessary where the originals may be produced in response to this subpoena. *In re Grand Jury No. 76-3*, 555 F.2d at 1308-1309; *Midland Asphalt Corp.*, 616 F.Supp. at 224-225; *Van Horn*, 156 F.R.D. at 232. And the Department has not indicated the reason for soliciting objections from the individual Officers involved, which is the stated reason for creating an index of the files. *Compare Supervisor of Public Records*, No. 611, November 1, 1979 (where request was made for information about sabbaticals of University of Massachusetts professors, fees for notification of and review by faculty members involved were impermissible where there was no legal requirement of notification or review).

Finally, in this case especially, it seems that the Boston Police Department's duty to provide evidence (as described by *Hurtado* and its progeny) is even greater than the duty owed by a totally disinterested third party. The Boston Police were responsible for the defendant's arrest, and continue to play a leading role in his prosecution. *Compare Grand Jury Investigation*, 459 F.Supp. at 1338 ("petitioner is not a complete stranger to this investigation"). In this respect, the taxpayers of the Commonwealth of Massachusetts and the federal taxpayers share a common interest in seeing that justice is done in this case. It is entirely appropriate, under the circumstances, for the Boston Police

-9-

Department to absorb the cost of compliance with the defendant's subpoena. *See* 950 CMR 32.00 (PUBLIC RECORDS ACCESS), § 32.06(5) ("Every custodian, unless otherwise required by law, is required to waive fees where disclosure would benefit the public interest").

>    **D.    Information about the Credibility and Bias of Testifying Police Officers Is Required to Be Disclosed.**

The Court has already ordered that portions of the IAD file of Gregory Brown be produced. Among the documents produced is a "Detail Billing & Payment" form. The form has a start time of 7:00 a.m. and a finish time of 5:30 p.m., and a notation "whole hours to be paid, 11". Directly below that information is a printed line for "officer's signature," followed by an attestation, "I attest to the accuracy of the hours." Officer Brown then signed the form, even though even by his story, he did not start work until 8:30 a.m. This evidence certainly bears on the officer's veracity.

The other subponeaed records may well contain similar information that could be used to impeach the officers' credibility or bias. Applicable caselaw certainly makes evidence about police misconduct admissible in some circumstances. In *United States v. Garrett*, 542 F.2d 23 (6th Cir. 1976), the court reversed a conviction where the district court foreclosed discovery as to an undercover agent's disciplinary records relating to his use of narcotics and failure to submit to urinalysis. Such evidence was relevant because the undercover agent "might well have looked upon a successful prosecution of [the defendant] as a means of having his [own] suspension [from duty] lifted." *Id.* at 26. *See also United States v. Brooks*, 966 F.2d 1500, 1503 (D.C. Cir. 1992)(government's duty to produce exculpatory material extended to local police department's homicide and Internal Affairs Division files); *United States v. Henthorn*, 931 F.2d 29, 31 (9th Cir. 1990) (government's failure to examine personnel files upon a defendant's request for production of

exculpatory material was reversible error).

**III.     CONCLUSION.**

The Boston Police Department's Motion to Quash should be denied, and the subpoenaed documents provided to the defendant, in their entirety, at the Department's expense.  Unless and until the Department can establish with sufficient specificity that portions of the records are legally exempt from disclosure, or that any reasonable costs of producing the records are unduly burdensome, the defendant's subpoena should be honored.

Respectfully submitted,
**GREGORY R. WRIGHT**
By his attorney,

__/s/_____
Charles W. Rankin, BBO #411780
Rankin & Sultan
One Commercial Wharf North
Boston, MA 02110
(617) 720-0011

Dated: July 26, 2005

-11-

# RANKIN & SULTAN
## ATTORNEYS AT LAW

CHARLES W. RANKIN
JAMES L. SULTAN
CATHERINE J. HINTON
———
MICHELLE MENKEN
JONATHAN HARWELL
  MEMBER OF TENNESSEE BAR ONLY

ONE COMMERCIAL WHARF NORTH
BOSTON, MASSACHUSETTS 02110
(617) 720-0011
———
FAX (617) 742-0701
EMAIL OFFICE@RANKIN-SULTAN.COM

June 27, 2005

Office of the Legal Advisor
Boston Police Department
One Schroeder Plaza
Boston, MA 02120

Dear Sir/Madam:

I am writing pursuant to the Massachusetts Public Records Law, G.L. c. 66, §10(a), to request all records of any Internal Affairs investigations and proceedings concerning the following three members of the Boston Police Department:

1.    Officer Gregory Brown
2.    Officer Lawrence Celester
3.    Officer Mark Boardley

Such records shall include, but not be limited to, complaints, complaint control forms, investigative memoranda, transcripts of witness interviews, witness statements, other evidentiary material relied upon by the Department in the course of its investigations, documentation of all investigatory findings on any and all complaints, documentation of the disposition of any and all complaints, and documentation of any sanctions imposed and/or Settlement Agreements executed.

Sincerely yours,

Michelle Menken

By facsimile transmission to: 617-343-4609

# Boston Police
### D E P A R T M E N T

1 Schroeder Plaza, Boston, MA 02120-2014

July 7, 2005

Michelle Menken
Rankin & Sultan
One Commercial Wharf North
Boston, MA  02110

Re:    Public Record Request

Dear Mr. Menken:

        This letter is in response to a Public Record Request received by the Boston Police Department ("Department) for all records pertaining to disciplinary actions of Gregory Brown, Lawrence Celester and Mark Boardley  Please be advised of the following:

        It is the Department's intention to object to production of Internal Affairs files when the disclosure would invade an employee's legitimate privacy rights or the legitimate privacy rights of complainants and/or witnesses and where disclosure would violate statutory requirements.  The documents that **can** be provided are redacted of personal identifying information, pursuant to G.L.c. 4, §7, cl. 26 (c) and consistent with Antell v. Attorney General, 52 Mass. App. Ct. 244 (2001) and Wakefield Teachers Ass'n v. School Comm. Of Wakefield, 431 Mass. 792 (2000).  Prior to responding to this request an itemized and indexed document log of each file must be created and forwarded to the requested officer for any specific objections.

        There are 12 files in response to your request for Internal Affairs files of the above-mentioned officers.  It is estimated that the cost of retrieval, segregation, creation of an index log and copying of the documents is **$2,940.00.** *

Please call me if you have any questions.

Sincerely,

Catherine L. Teahan
Paralegal
Office of the Legal Advisor
617-343-4550

**\*Cost based on 12 files**

**3 hours per file to review, redact and index (estimated file size - 200 pgs ea.)**
**3 x $15.00 x 12 files - $540.00**
**$1.00 per page copy cost (est. 12 files @ 200 pgs ea.) = $2,400.00**

Please make your check payable to the City of Boston, and forward to the Office of the Legal Advisor with a copy of this letter for reference.  <u>See</u> 950 C.M.R. 32.06(1); 950 C.M.R. 32.03; M.G.L. c 66 § 10(a).