PUBLIC RECORDS                                                66 § 10

### § 5A. Records of meetings of boards and commissions; contents

#### Research References

**Treatises and Practice Aids**
18 Mass. Prac. Series § 181, Meetings of Governmental Bodies.

18 Mass. Prac. Series § 184, Public Records.

### § 6. Records of public proceedings; preparation; custody

#### Research References

**Treatises and Practice Aids**
18 Mass. Prac. Series § 184, Public Records.

### § 7. Custody of old and other records

#### Research References

**Encyclopedias**
38 Am. Jur. Proof of Facts 3d 63, Defense of a Teacher Charged With Unfitness to Teach.

2A Mass. Prac. Series § 55:41, Admission of Public Records.

**Treatises and Practice Aids**
18 Mass. Prac. Series § 221, City or Town Clerk.

### § 8. Preservation and destruction of records, books and papers

#### Research References

**Treatises and Practice Aids**
18 Mass. Prac. Series § 184, Public Records.

44 Mass. Prac. Series § 13, Arrest and Pre-Trial Detention.

### § 9. Preservation and copying of worn, etc., records

#### Research References

**Treatises and Practice Aids**
18 Mass. Prac. Series § 184, Public Records.

### § 10. Public inspection and copies of records; presumption; exceptions

(a) Every person having custody of any public record, as defined in clause Twenty-sixth of section seven of chapter four, shall, at reasonable times and without unreasonable delay, permit it, or any segregable portion of a record which is an independent public record, to be inspected and examined by any person, under his supervision, and shall furnish one copy thereof upon payment of a reasonable fee. Every person for whom a search of public records is made shall, at the direction of the person having custody of such records, pay the actual expense of such search. The following fees shall apply to any public record in the custody of the state police, the Massachusetts bay transportation authority police or any municipal police department or fire department: for preparing and mailing a motor vehicle accident report, five dollars for not more than six pages and fifty cents for each additional page; for preparing and mailing a fire insurance report, five dollars for not more than six pages plus fifty cents for each additional page; for preparing and mailing crime, incident or miscellaneous reports, one dollar per page; for furnishing any public record, in hand, to a person requesting such records, fifty cents per page. A page shall be defined as one side of an eight and one-half inch by eleven inch sheet of paper.

(b) A custodian of a public record shall, within ten days following receipt of a request for inspection or copy of a public record, comply with such request. Such request may be delivered in hand to the office of the custodian or mailed via first class mail. If the custodian refuses or fails to comply with such a request, the person making the request may petition

the supervisor of records for a determination whether the record requested is public. Upon the determination by the supervisor of records that the record is public, he shall order the custodian of the public record to comply with the person's request. If the custodian refuses or fails to comply with any such order, the supervisor of records may notify the attorney general or the appropriate district attorney thereof who may take whatever measures he deems necessary to insure compliance with the provisions of this section. The administrative remedy provided by this section shall in no way limit the availability of the administrative remedies provided by the commissioner of administration and finance with respect to any officer or employee of any agency, executive office, department or board; nor shall the administrative remedy provided by this section in any way limit the availability of judicial remedies otherwise available to any person requesting a public record. If a custodian of a public record refuses or fails to comply with the request of any person for inspection or copy of a public record or with an administrative order under this section, the supreme judicial or superior court shall have jurisdiction to order compliance.

(c) In any court proceeding pursuant to paragraph (b) there shall be a presumption that the record sought is public, and the burden shall be upon the custodian to prove with specificity the exemption which applies.

(d) The clerk of every city or town shall post, in a conspicuous place in the city or town hall in the vicinity of the clerk's office, a brief printed statement that any citizen may, at his discretion, obtain copies of certain public records from local officials for a fee as provided for in this chapter.

The executive director of the criminal history systems board, the criminal history systems board and its agents, servants, and attorneys including the keeper of the records of the firearms records bureau of said department, or any licensing authority, as defined by chapter one hundred and forty shall not disclose any records divulging or tending to divulge the names and addresses of persons who own or possess firearms, rifles, shotguns, machine guns and ammunition therefor, as defined in said chapter one hundred and forty and names and addresses of persons licensed to carry and/or possess the same to any person, firm, corporation, entity or agency except criminal justice agencies as defined in chapter six and except to the extent such information relates solely to the person making the request and is necessary to the official interests of the entity making the request.

*[ Third paragraph of subsection (d) effective until July 1, 2004. For text effective July 1, 2004, see below.]*

The home address and home telephone number of law enforcement, judicial, prosecutorial, department of youth services, department of social services, department of correction and any other public safety and criminal justice system personnel shall not be public records in the custody of the employers of such personnel or the public employee retirement administration commission or any retirement board established under chapter 32 and shall not be disclosed, but such information may be disclosed to an employee organization under chapter 150E, a nonprofit organization for retired public employees under chapter 180 or to a criminal justice agency as defined in section 167 of chapter 6. The name and home address and telephone number of a family member of any such personnel shall not be public records in the custody of the employers of the foregoing persons or the public employee retirement administration commission or any retirement board established under chapter 32 and shall not be disclosed. The home address and telephone number or place of employment or education of victims of adjudicated crimes and of persons providing or training in family planning services and the name and home address and telephone number, or place of employment or education of a family member of any of the foregoing shall not be public records in the custody of a government agency which maintains records identifying such persons as falling within such categories and shall not be disclosed.

*[ Third paragraph of subsection (d) as amended by 2004, 149, Sec. 124 effective July 1, 2004. See 2004, 149, Sec. 428. For text effective until July 1, 2004, see above.]*

The home address and home telephone number of law enforcement, judicial, prosecutorial, department of youth services, department of social services, department of correction and any other public safety and criminal justice system personnel, and of unelected general court

**PUBLIC RECORDS** 66 § 10

personnel, shall not be public records in the custody of the employers of such personnel or the public employee retirement administration commission or any retirement board established under chapter 32 and shall not be disclosed, but such information may be disclosed to an employee organization under chapter 150E, a nonprofit organization for retired public employees under chapter 180 or to a criminal justice agency as defined in section 167 of chapter 6. The name and home address and telephone number of a family member of any such personnel shall not be public records in the custody of the employers of the foregoing persons or the public employee retirement administration commission or any retirement board established under chapter 32 and shall not be disclosed. The home address and telephone number or place of employment or education of victims of adjudicated crimes, of victims of domestic violence and of persons providing or training in family planning services and the name and home address and telephone number, or place of employment or education of a family member of any of the foregoing shall not be public records in the custody of a government agency which maintains records identifying such persons as falling within such categories and shall not be disclosed.

Amended by St.1948, c. 550, § 5; St.1973, c. 1050, § 3; St.1976, c. 438, § 2; St.1978, c. 294; St.1982, c. 189, § 1; St.1982, c. 477; St.1983, c. 15; St.1991, c. 412, § 55; St.1992, c. 286, § 146; St.1996, c. 39, § 1; St.1996, c. 151, § 210; St.1998, c. 233; St.2000, c. 159, § 133; St.2004, c. 149, § 124, eff. July 1, 2004.

### Historical and Statutory Notes

**2004 Legislation**

St.2004, c. 149, § 124, an emergency act, approved June 25, 2004, and by § 428 made effective July 1, 2004, rewrote the third paragraph, which prior thereto read:

"The home address and home telephone number of law enforcement, judicial, prosecutorial, department of youth services, department of social services, department of correction and any other public safety and criminal justice system personnel shall not be public records in the custody of the employers of such personnel or the public employee retirement administration commission or any retirement board established under chapter 32 and shall not be disclosed, but such information may be disclosed to an employee organization under chapter 150E, a nonprofit organization for retired public employees under chapter 180 or to a criminal justice agency as defined in section 167 of chapter 6. The name and home address and telephone number of a family member of any such personnel shall not be public records in the custody of the employers of the foregoing persons or the public employee retirement administration commission or any retirement board established under chapter 32 and shall not be disclosed. The home address and telephone number or place of employment or education of victims of adjudicated crimes and of persons providing or training in family planning services and the name and home address and telephone number, or place of employment or education of a family member of any of the foregoing shall not be public records in the custody of a government agency which maintains records identifying such persons as falling within such categories and shall not be disclosed."

### Code of Massachusetts Regulations

Gun transaction recording, criminal history systems board, see 803 CMR 10.01 et seq.

### Research References

**ALR Library**

171 ALR, Federal 193, What Constitutes "Confidential Source" Within Freedom of Information Act Exemption Permitting Nondisclosure of Confidential Source And, in Some Instances, of Information Furnished by Confidential Source (5 U.S.C.A. S552(.

26 ALR 4th 666, What Constitutes Personal Matters Exempt from Disclosure by Invasion of Privacy Exemption Under State Freedom of Information Act.

**Encyclopedias**

38 Am. Jur. Proof of Facts 3d 63, Defense of a Teacher Charged With Unfitness to Teach.

Am. Jur. 2d Freedom of Information Acts § 5, Local Statutory Citations.

**Treatises and Practice Aids**

7 Mass. Prac. Series § 26.5, Scope of Discovery-Trial Preparation Materials.

9 Mass. Prac. Series § 21.4, Scope of Discovery.

18 Mass. Prac. Series § 184, Public Records.

18 Mass. Prac. Series § 221, City or Town Clerk.

18 Mass. Prac. Series § 479, Firearms.

19 Mass. Prac. Series § 508.1, Governmental Privilege.

20 Mass. Prac. Series § 803.8, Official Written Records.

28 Mass. Prac. Series § 4.55, Elements of Deeds-Recordation-Unregistered Land.

37 Mass. Prac. Series § 34, Constitutional Issues.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 05-10001-WGY |
| ) | |
| GREGORY WRIGHT ) | |

**GOVERNMENT'S MEMORANDUM REGARDING THE FREEDOM OF INFORMATION ACT AND ACCESS TO RECORDS VIA RULE 17(c) SUBPOENA AND IN SUPPORT OF MOTION TO QUASH SUBPOENA**

The United States of America, by and through its attorneys, Michael J. Sullivan, U.S. Attorney for the District of Massachusetts, Nadine Pellegrini, and S. Waqar Hasib, Assistant U.S. Attorneys, hereby files this Memorandum of Law Regarding the Freedom of Information Act ("FOIA") and Access to FOIA Records via Rule 17(c) Subpoena as follows:

**I. Introduction**

1. On July 18, 2005, the court, at the conclusion of the second day of evidence on Defendant's Motion to Suppress requested briefing, *inter alia*, on the question of how to proceed with the issue presented by the Defendant's subpoena to the Boston Police Department for records which were obtainable pursuant to the Freedom of Information Act ("FOIA") but for which the Defendant did not have sufficient funds.[1] The court's concern appeared to be that the Defendant under federal criminal

---

[1] The Boston Police Department has filed a Motion to Quash the Subpoena.

law would normally be "in the same position, not as the most affluent criminal Defendant but the average criminal Defendant who has money," [Tr.II:73], but that in the forum of FOIA, the Defendant appeared to be at a disadvantage. While the court recognized that production of the documents in question and use of the same were two separate issues, it was concerned about the "institutional issue" presented by the requested payment as a prerequisite for production. The court went on to state that obtaining these records was "the same thing as getting discovery in a criminal case where now by using FOIA you can get discovery." [Tr. II:73-74].

    2. As set forth more fully below, the court's apprehension that the Defendant is disadvantaged within the FOIA process is unwarranted. The Defendant cannot, in fact, use FOIA to obtain discovery in a criminal case. Neither FOIA nor the issuance of 17(c) subpoenas can be used for the purpose of pretrial discovery. What the Defendant seeks is not discovery in the criminal case, since those documents and items which are deemed material to his defense have been provided to him under an extensive system of case law, statutory regulation and this District's Local Rules ("L.R."). There has been no showing that L.R. 116.2 requires supplementation.[2]

---

    [2]Quite obviously, the Local Rules were established to be as inclusive as possible. The Report of the Judicial Members of the Committee established to Review and Recommend Revisions of the Local Rules of the United States District Court for the District of Massachusetts concerning Criminal cases, dated October 28,

3. Defendant is, in fact, similarly situated with every other Defendant in federal and state criminal cases with respect to FOIA.  While the Defendant may, in fact, be entitled to the requested FOIA materials, he is *not* entitled to such within the confines of the criminal case.  The material to which the Defendant is entitled within the confines of the criminal case has been produced.  The Defendant has not made any claim or showing that the government has failed to provide the exculpatory material as required pursuant to Local Rule 116.2.[3]  Moreover, he is not adversely affected within the criminal case, given the stringent requirements of exculpatory material upon the government. The Defendant's inability to pay administrative costs for a FOIA request does not permit the use of the federal criminal process to be imposed upon a state statutory

---

1998, states as follows: "The District Court decided that such a specific description of exculpatory information is necessary to minimize the possibility that the government will fail to met its responsibilities; to maximize consistency in the practices among prosecutors and to implement the principle that different forms of exculpatory information should ordinarily be disclosed at different times."
    Further, "it is the government's 's obligation to disclose information that is both material and favorable to the accused because it falls into one or more of four categories."

   [3]Since the material regarding Officer Brown has been produced, the issue centers on the information regarding the other two officers. The Defendant weakly argues that the subpoenaed records "may well contain similar information that could be used to impeach the officer's credibility or bias." Defendant's Brief, p. 10. The government stands by its Giglio and Brady production and is ready to produce to the court in camera its efforts to obtain all relevant information as required by law.

administrative scheme. Indeed, as seen, *infra,* to permit the Defendant to procure documents in this manner will set the Defendant apart from other Defendants similarly situated; adversely affect the administrative scheme, and unduly burden a state agency.

**II. FOIA and Criminal Discovery**

The diverging purposes of FOIA and criminal discovery have long been recognized. The First Circuit has clearly stated that "... FOIA was not enacted to provide litigants with an additional discovery tool." Columbia Packing Company Inc. v. USDA, 563 F.2d 495 (1st Cir. 1977). The presence of a pending criminal case is not, contrary to the Defendant's position, dispositive of the issue of production. "It is settled that the disclosure provisions of FOIA are not a substitute for discovery and a party's asserted need for documents in connection with litigation will not affect, one way or the other, a determination of whether disclosure is warranted under FOIA." New England Apple Council v. Donovan, 725 F.2d 139 (1st Cir. 1984).

The criminal discovery function and administrative FOIA function do not work towards the same end.

> In criminal cases, the defense is permitted to discover documents in the Government's possession if such documents are 'material to the preparation of [the] defense.' F.R.Crim. P. 16. Materiality is a necessary prerequisite to discovery.
>
> Under the Freedom of Information Act, by contrast, documents must be produced and disclosed on the request of any person without regard to the purpose for obtaining the document or the relevancy of the

> documents for a particular use, subject to certain exclusions and exemptions.
>
> We hold that in criminal cases the Freedom of Information Act does not extend the scope of discovery permitted under Rule 16. The limitations of Rule 16 are controlling.

United States v. DeLorean, 717 F.2d 487, 480 (9th Cir. 1983).

In addition to the First and Ninth Circuits, the Fifth Circuit in U.S. v. Murdock, 548 F.2d 599 (5th Cir. 1977), and the Court of Appeals, District of Columbia, in North v. Walsh, 881 F.2d 1088 (U.S. App.D.C.1989), have agreed that "FOIA was not intended as a device to delay ongoing litigation **nor to enlarge the scope of discovery beyond that already provided by the Federal Rules of Criminal Procedure.**" Murdock, 548 F.2d at 602 (emphasis added.)

Because FOIA requests are not within the purview of criminal discovery, the issue of funds allocated for payment in an administrative forum raises another concern. Obviously, the government cannot be required to provide funds for payment. "As the United States Supreme Court has made clear, the federal government may be directed to pay the litigation expenses of *an in forma pauperis* litigant only when there is an express authorization for the particular expense at issue." United States v. MacCollom, 426 U.S. 317, 321 (1976).

Similarly, simply ordering the production without payment is not an option. The government is unable to locate any case, nor does the Defendant cite any case, which stands for the proposition that a court has the ability and jurisdiction to order production without payment.  In <u>Smith v. Buffalo Board of Education</u>, 1997 WL 613255 (W.D.N.Y.1997), the District Court denied Smith's request for an order permitting Smith to obtain FOIA documents without payment because Smith did not cite to any authority "even suggesting that this Court has jurisdiction to grant such a request." <u>Smith</u>, *3.

In <u>Crooker v. Bureau of Alcohol, Tobacco and Firearms</u>, 557 F.Supp. 1213 (D.D.C. 1983), Crooker argued that because he was indigent, the FOIA costs must be waived.  The court disagreed, noting that the determination to waive fees lay with the agency. The court noted that under FOIA, "in order for an agency to grant a fee waiver it must find that granting such a waiver and furnishing the information requested will benefit the public at large, rather than merely benefitting the individual who requests the information." <u>Crooker</u>, 557 F.Supp. at 1215, citing also <u>Eudey v. CIA</u>, 478 F.Supp. 1175 (D.D.C. 1979) and <u>Burriss v. CIA</u>, 524 F. Supp. 448 (M.D. Tenn.1981)("public should not foot the bill [for the search] unless [the public] will be the primary beneficiary of the search.")

Specifically with respect to the Massachusetts Freedom of Information Act, the language of the attending regulations is in conformance with the federal courts opinions. The statute requires that "every person for whom a search of public records is made shall pay the actual expenses of such search." Although the attendant regulations, found at 950 CMR 32.06(5) provide for a waiver of fees, the waiver must be based upon the public interest. Indigency is not a basis. See Fierro v. Hiscock, et al., Middlesex Superior Court, C.A. No. 96-7243(1997)(holding that indigent prisoner not entitled to receive records sought pursuant to the Public Records Law.) Given that the Massachusetts Legislature has provided procedures for waivers based upon indigency in civil, criminal and juvenile proceedings, *see* G.L. c. 261 §27A proceedings, there is every reason to assume that, should they have wished to have an indigency waiver provision, they would provide for such. Conversely, there is no reason to assume that the omission of such a basis in this administrative procedure is simply oversight; rather it appears to be a balancing act which recognizes the purpose of FOIA and balances that purpose with the imposition upon government agencies to collect, search and copy records.

In this regard, attempts to circumvent the issuance of payment by the issuance of a subpoena pursuant to Rule 17(c) does not provide a safe harbor.[4]  First, the issuance will not save the public money as counsel originally proffered. ("...[We thought that it might be more effective for the taxpayers to serve a subpoena for the documents." [Tr. II-4].  Since the work of searching, compiling and copying must still be done, the cost of the work is still present and borne by the Police Department. The cost will not be obviated by the issuance of a subpoena.[5]  Moreover, it is quite clear that 17(c) subpoenas are not permitted for such use. United States v. Nixon, 418 U.S. 683, 698 (1974).  In Nixon, the Supreme Court held that the pretrial subpoena must be quashed unless (1) the documents it seeks are evidentiary and relevant; (2) the documents are not otherwise procurable in advance of trial by the exercise of due diligence; (3) the party cannot properly prepare for the trial without the documents and the failure to examine the documents may unreasonably delay the trial and (4) the application is made in

---

[4]The government has not been provided with a copy of the subpoena. However, as the subpoena requested material for use in a pre-trial hearing, the government contends it is in effect, a pre-trial subpoena and subject to 17(c) restrictions.

[5]The notion that the Boston Police Department will simply bear the cost of replying to the subpoena also further highlights the impermissible meshing of a FOIA request with a subpoena request. Since the material requested is not yet determined to be admissible, material and relevant evidence, the cases cited by the Defendant in support of this proposition are inapplicable.

good faith and is not intended as a general fishing expedition. Nixon, 418 U.S. at 699-700. Additionally, the First Circuit has noted the requirement of relevancy. United States v. Concemi, 957 F.2d 942 (1st Cir. 1992)(noting that mere speculation does not suffice). As this court itself has already labeled the Defendant's request as a fishing expedition, [II:73], it is difficult to fathom how the subpoena can survive scrutiny under Nixon and First Circuit precedent.

According to the regulations promulgated pursuant to the Massachusetts Public Records Law, every custodian, unless otherwise required by law, is encouraged to waive fees where disclosure would benefit the public interest. 950 CMR 32.06(5). In this case, Defendant did not request a waiver, raising the question of whether of not he should be permitted to seek relief in the courts as he has failed to exhaust his administrative remedies. Oglesby v. U.S. Department of the Army, 920 F.2d 57, 61-2 (D.C.Cir.1990)("the doctrine of exhaustion of administrative remedies include: (1) it provides the agency with the opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision; (2) top managers of an agency are given the opportunity to correct mistakes made

at the lower level, thereby obviating unnecessary judicial review; (3)ignoring administrative processes could weaken the effectiveness of the agency by encouraging people to ignore its procedures; (4) the agency possesses expertise in dealing with complicated and technical facts in certain areas of the law; and (5) resolution of the dispute may involve interpretation and application of agency regulations.") This requirement of administrative exhaustion is brought into sharp focus, particularly by the Defendant's dispute with those documents which are not produced because they are not, in fact, public records.  This dispute raises precisely those issues to be addressed by administrative remedies: the need for expertise and interpretation of the definition of public records under Massachusetts state law. To permit the Defendant to proceed in this manner usurps the authority of the Secretary of the Commonwealth who is charged by state law as the Supervisor of Public Records. 950 CMR 32.03 and 32.04.

**III. Massachusetts Freedom of Information/Public Records Law**

The current Massachusetts Public Records Law, M.G.L. c. 66 §10(a), was modeled on the federal Freedom of Information Act, 5 U.S.C. §552, and provides initially, that every person having custody of any public record, shall, at reasonable times and without unreasonable delay, permit it, or any segregable portion

of a record which is an independent public record to be inspected and examined by any person, under his supervision, and shall furnish one copy thereof upon payment of a reasonable fee. It thereafter lists the fees that shall apply for records in the custody of the state police, the MBTA police or any municipal police department and fire department. A copy of MGL c. 66, §10(a) is attached.

**CONCLUSION**

The government respectfully requests that this Court deny grant the Motion to Quash filed by the Boston Police Department and deny the Defendant's request for production of FOIA materials.

                                    Respectfully submitted,

                                    MICHAEL J. SULLIVAN
                                    United States Attorney

                         By:  /s/ Nadine Pellegrini
                             Nadine Pellegrini
                             S. Waqar Hasib
                             Assistant U.S. Attorneys

CERTIFICATE OF SERVICE

This is to certify that I have this day served upon the person listed below a copy of the foregoing document by electronic filing:

>Charles Rankin, Esq.
>
>Rankin & Sultan
>
>One Commercial Wharf North
>
>Boston, MA    02110

This 26th day of July, 2005.

>/s/ Nadine Pellegrini
>
>Assistant U.S. Attorney